UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | CR04-1239(A)- CAS | | Date | April 9, 2008 |
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| CATHERINE JEANG | Not Present | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder,* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Rtnd |
|---|---|---|---|---|---|---|---|
| JESUS ORTIZ | Not | X | | VICTOR SHERMAN | Not | | X |

**Proceedings:**   (In Chambers): GOVERNMENT'S MOTION TO INTRODUCE SUPPLEMENTARY EVIDENCE (filed 4/7/08)

Defendant Jesus Ortiz' criminal trial began on April 1, 2008. On April 7, 2008, the government filed a trial memorandum in which it requested that recently-discovered evidence be admitted. The Court heard oral argument on the matter on April 8, 2008. Defendant filed a brief in opposition on April 9, 2008. An evidentiary hearing was conducted on April 9, 2008.

In essence, the government now seeks to introduce at trial recently-discovered evidence. Defendant argues that doing so at this late stage would violate Federal Rule of Criminal Procedure 16. The evidence in question consists of telephone conversations between defendant and other persons that were recorded by the Bureau of Prisons between November 2, 2007 and January 5, 2008, while defendant was incarcerated at MDC. These telephone calls are hereafter referred to as "the MDC conversations." The government intends to use this evidence to demonstrate that defendant is also known by the name "Toro." This is a relevant issue because the question of whether defendant is known by the name Toro bears on whether defendant was a participant in several intercepted telephone conversations that are pertinent to this case.

On April 2, 2008, during defendant's opening statement, counsel for defendant argued that he was not one of the speakers on the intercepted conversations and that he was not known as "Toro." According to the government, this was the first time that defendant argued that he was not known as Toro.[1]

---

[1] The government also contends that until then, defendant had not contested that his was one of the voices in the intercepted conversations. The government points out that that defendant has previously filed in this action a memorandum of points and authorities in which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

  In response to this argument, on April 2, 2008, the government subpoenaed the Bureau of Prisons to obtain recordings of defendant's telephone calls during his incarceration at the Metropolitan Detention Center in Los Angeles.  Declaration of Terrence P. Mann ¶ 2.  On April 3, 2008, in response to the subpoena, an agent of the United States Drug Enforcement Agency retrieved the MDC conversations, which consist of approximately 100 completed telephone calls.  Id. ¶ 3.  According to the government, because the government's attorneys were in trial on April 3, they were unable to listen to the conversations until that evening.  Id.  The government asserts that on the afternoon of April 4, 2008, they identified a telephone conversation in which defendant made statements that were relevant to this case.  Id. ¶ 4.  The government asserts that on that day, the government sent a copy of all of the conversations to defendant by overnight mail, including a printout of these conversations, and a cover letter.  Id.  The government further asserts that it electronically mailed these materials to defendant.  Id.  Defendant confirmed his receipt of these materials on the evening of April 4, 2008.  Id. ¶ 5.

  Defendant contends that the MDC conversations are inadmissible because the government failed to make a timely disclosure of these materials.  Pursuant to Federal Rule of Criminal Procedure 16,

> [u]pon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
>  (i) any relevant written or recorded statement by the defendant if:
> - the statement is within the government's possession, custody, or control; and
> - the attorney for the government knows--or through due diligence could know--that the statement exists . . .

Fed. R. Crim. P. 16(a)(1)(B).

  On its face, Rule 16(a)(1)(B) requires disclosure of only those recorded statements that are relevant.  The government contends that the MDC conversations are relevant only to show that defendant is referred to by others as "Toro."  Defendant has not indicated that these

---

defendant argued that "The Government Should Not Be Permitted to Admit Jesus Ortiz' Intercepted Conversations as Evidence."  See Def.'s Motion in Limine to Exclude Intercepted Conversations at 1 (Docket 264).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CRIMINAL MINUTES - GENERAL**

materials are relevant for any other purpose.  The question, therefore, is when the government should have known that evidence tending to show that "Toro" is defendant's alias would be relevant.

The government argues that it had no way of knowing that such evidence would be relevant until defendant contested this issue in his opening statement to the jury on April 2, 2008.  Based on defendant's prior representations in this action, the Court concurs with the government's contention.

In a memorandum in support of defendant's earlier motion in limine to exclude the intercepted conversations, defendant asserted, "[a]long with five codefendants, Jesus Ortiz (aka Toro) is charged with conspiracy to distribute at least 15 kilograms of cocaine in count one of a four-count indictment."  Docket 264 at 1.  During oral argument on April 8, 2008, counsel for defendant contended that he wrote "Jesus Ortiz (aka Toro)" in the memorandum because this is how defendant was described in the first superseding indictment.  However, the first superseding indictment alleges that defendant had *two* aliases: Toro" and "Mario Gonzalez."  The better interpretation is that this statement is an admission that "Toro" is defendant's alias.

Additionally, defendant's memorandum in support of his motion in limine to exclude informant testimony contains the following language:

> In [Jorge Ortiz'] debriefing, he stated that he had recruited his brother, Jesus [Ortiz], into drug trafficking.  According to Jorge, Jesus distributed one to ten kilograms of cocaine per week and had the same source of supply and many of the same customers as Jorge. Jesus and Jorge used to buy drugs from Alberto Flores (aka Ballo), but were more recently allegedly buying from an individual known as Pelon, whom he and Jesus had met together about a year earlier.  Thus, according to Jorge, *he and Toro* had separate narcotics organizations that sometimes overlapped in terms of suppliers and customers.

Docket 262 at 2 (citations omitted, emphasis supplied).  This statement is also an admission that defendant and "Toro" are one and the same person.

Even if defendant's foregoing statements are not admissions, a reasonable person would interpret these statements as indicating that defendant did not dispute that he was known by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

alias "Toro." Notably, defendant does not point to any document filed with this Court in which he disputed that he was the same person as "Toro."[2]

During oral argument, defendant contended that he notified the government of his intent to contest the issue of defendant's alias approximately a week before the trial began, when he discussed with the government his concerns regarding the transcriptions of the intercepted conversations. Defendant's concerns were taken up before the Court on April 1, 2008. Defendant's objection at that time was that the transcriptions designated "Toro" as one of the speakers in the intercepted conversations. Defendant argued that this designation was prejudicial because it would suggest to the jury that defendant was a participant in the intercepted conversations. To address this concern, the Court ordered that the transcription be modified so that, in place of "Toro," the speaker would be designated anonymously.

To the extent that defendant argues that his concerns regarding the transcriptions of the intercepted conversations placed the government on notice that defendant contested the issue of defendant's alias, this argument is unavailing. Designating one of the speakers in these conversations as "Toro" would only have prejudiced defendant if, in fact, the jury believed that defendant was Toro. Thus, the fact that defendant raised concerns about the prejudicial effect of including the name "Toro" in the transcriptions would not have placed the government on notice of defendant's further argument that despite the fact that the government's cooperating witness, Kendall Stewart, had identified the speaker on the intercepted telephone calls as "Toro," defendant does not use "Toro" as an alias.

Defendant relies on United States v. Lanoue, 71 F.3d 966 (1st Cir. 1995), and United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982). Both of these cases counsel in favor of a extremely broad view of what matters are relevant, and thus, what materials must be disclosed by the government in a criminal case. Bailleaux, 684 F.2d at 1114 ("the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert."); Lanoue, 71 F.3d at 974 ("The rule gives a defendant virtually an absolute right to his own recorded statements in the absence of highly

---

[2] Defendant further argues that he apprised the government of his intent to contest that he is one of the speakers in the intercepted conversations "well before trial," although he does not specify when or how he communicated this intent to the government. Opp'n 3-4. In any event, the issue of the identity of the speaker in the intercepted conversations is distinct from whether or not defendant's alias is Toro. For example, it is conceivable that defendant's alias is Toro and that one of the speakers in the intercepted conversations is referred to as Toro, but that defendant is not one of the speakers in the intercepted conversations.

unusual circumstances that would otherwise justify a protective order.") (citation and quotations omitted).  In Bailleaux, the defendant's recorded conversation was relevant for the purposes of Rule 16 chiefly because the identification of an extortionist's voice was a material issue at trial.  Bailleaux, 685 F.2d at 1114-15.  In Lanoue, the defendant's recorded statement was "obviously relevant" because it contained both inculpatory and exculpatory statements.  Lanoue, 71 F.3d at 974.

This case presents the rare exception to the rule.  Here, the issue of whether "Toro" is one of defendant's aliases did not become relevant until trial.  While Bailleaux and Lanoue place a heavy burden on the government to anticipate the defendant's arguments and to disclose relevant materials accordingly, it does not appear that this rule is intended to go so far as to require the disclosure of evidence that does no more than affirm what no reasonable person would consider to be an issue in dispute.  The Court is mindful that under Rule 16, relevancy is construed broadly.  However, to find a violation of the rule in this instance because the government did not disclose the MDC conversations earlier would render the relevancy requirement of Rule 16 a nullity.

Thus, the Court concludes that the MDC conversations did not become relevant until the defendant placed in issue the question of whether "Toro" is his alias during his opening statement on April 2, 2008.  The record reflects that thereafter, the government acted promptly to determine the existence of evidence relevant to this newly raised issue.  Once they identified such evidence, the government disclosed it to defendant without undue delay.  Under these circumstances, the government did not violate Rule 16's disclosure requirements.

Defendant further argues that because the government intends to use the statements in the MDC conversations to prove that the speaker has identified the defendant as "Toro," these statements are inadmissible hearsay.  The government argues that it intends to use these conversations only to show that defendant responded to the name "Toro."

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  The definition of "statement" includes "an oral or written assertion . . ."  Fed. R. Evid. 801(a).  In a similar context, the Fifth Circuit ruled that a person's out of court statement in which he referred to the defendant by a particular moniker, which was offered to prove that the defendant used the moniker, was not hearsay because the statement was non-assertive.  United States v. Weeks, 919 F.2d 248, 251-52 (5th Cir. 1990).  Here, because the MDC conversations do not appear to contain statements of fact to the effect that defendant is known as "Toro," these statements are not assertions.  Therefore, these statements are not hearsay.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

At the April 9, 2008 evidentiary hearing, the Court found that the chain of custody had been established and that all copies of the MDC conversations that had not be destroyed in the regular course of business had been disclosed to defendant. The parties thereafter agreed to stipulate to the foundation for the MDC conversations to be played for the jury, it being understood that defendant reserves all other objections to the Court's ruling herein.

In accordance with the foregoing, the Court finds and concludes that the MDC conversations are admissible.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |